IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MAY 1997 SESSION

FILED

August 5, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 02C01-9605-CR-00182 |
| Appellee, | * | SHELBY COUNTY |
| VS. | * | Hon. Chris Craft, Judge |
| KENDRICK M. FORD, | * | (Especially Aggravated Kidnapping, Aggravated Robbery, Attempted |
| Appellant. | * | Aggravated Robbery, and Aggravated Assault) |

For Appellant:

A.C. Wharton
Shelby County Public Defender

Edward G. Thompson
Assistant Public Defender
212 Adams Avenue
Memphis, TN 38103
(on appeal)

William C. Moore
Assistant Public Defender
201 Poplar Avenue, Second Floor
Memphis, TN 38103
(at trial)

For Appellee:

Charles W. Burson
Attorney General & Reporter

William David Bridgers
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

Amy P. Werich
Asst. District Attorney General
201 Poplar Avenue, Third Floor
Memphis, TN 38103

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

# OPINION

The defendant, Kendrick M. Ford, was convicted of the especially aggravated kidnapping and aggravated robbery of Walter Lee Mitchell for which he received concurrent, Range I sentences of nineteen years and eight years, respectively. He was also convicted of the attempted aggravated robbery and aggravated assault of Charles Moore. The trial court imposed concurrent, Range I sentences of four and three years, to be served concurrently. Because the offenses against each of the two victims were ordered to be served consecutively, the effective sentence is twenty-three years.

In this appeal of right, the defendant challenges the sufficiency of the evidence and claims that the sentences are excessive. We find no error and affirm the judgment of the trial court.

On the evening of November 1, 1994, the victim, Walter Lee Mitchell, after having delivered a package to a friend at an apartment complex in Memphis, was assaulted as he returned to his vehicle. The first assailant, later identified as Michael Mosby, was dressed in a turquoise hooded jacket. Mosby forced the victim into his backseat as a second man, who wore a black sweater and pants and a gold chain around his neck, stood by the passenger side door. The second man, later identified as the defendant, drove the vehicle away as Mosby held a gun on the victim. The victim overheard one of the men say that the car would be used to "kill some white boys"; the victim was told that if he tried anything, he would be shot. The two assailants spoke in pig Latin and referred to each other by number; the defendant was referred to as number one. Twenty or twenty-five minutes later, Mosby asked the defendant where "three" and "four" were and then said, "We can't leave any evidence." Eventually, the victim was forced from the vehicle, had his

2

head covered with a jacket, and was lead into a wooded area where he was tied to a tree and gagged with a sock. Afterward, he freed his mouth of the sock and called for help. Within two hours, officers found the victim bound to the tree. Just as the victim provided officers with a statement, there was a radio report of gunshots and the description of a vehicle matching that of the defendant.

Later on the same evening, the victim's car was used to block a vehicle driven by Charles Moore. The defendant got out of the victim's vehicle and pointed a pistol at Moore. Moore then startled the defendant by kicking the windshield and the defendant drove away. Moore called 911 on his cellular phone and then followed the car driven by the defendant to a dead-end street. The defendant then fired several shots at Moore; later, four .80 caliber casings were found at the scene. Moore, who testified that there were street lights in the area, described the defendant as "dressed in dark clothing."

Officer Robert J. Honore of the Memphis Police Department, who heard several of the shots, stopped Moore's vehicle as he sped from the scene. While Moore was explaining the nature of the incident, he saw Mitchell's car being driven from the scene. Officer Honore reported by radio the location of the fleeing vehicle. Officer Eddie B. Bass, Jr., responding to the report, was unable to get the defendant to stop but did see two men jump from the Mitchell car as it crashed into a pole. Officer T.J. Griffin, who had also responded to the call, chased the defendant and Mosby into the Brookwood Apartments where Officer Bass discovered the defendant knocking at the door of an aunt, Coreen Ford. The officer then chased and tackled the defendant. Officer Griffin made the arrest while Bass chased after Mosby. Both Mitchell and Moore were later able to identify the defendant as their assailant when he was brought by police to their location.

3

I

The defendant first complains that the evidence is insufficient for the failure of the state witnesses to make an adequate identification. The defendant complains that the identification process was overly suggestive and that, in consequence, the evidence was insufficient.

A jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted to the jury as triers of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). This court may not reevaluate the evidence or substitute its inferences for those drawn by the trier of fact. Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). A conviction may be set aside only when the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e).

Here, witnesses for the state identified the defendant as to each of the four crimes. Each had an opportunity to observe the defendant. Their identifications were expressed with certainty. There were no instances when those witnesses misidentified the defendant. Their testimony about the identification of the defendant was generally consistent. See State v. Dyle, 899 S.W.2d 607, 612 (Tenn. 1995). Thus, in our view, the evidence was sufficient.

4

To be admissible as evidence, an identification must not have been conducted in such an impermissibly suggestive manner as to create a substantial likelihood of irreparable misidentification. Simmons v. United States, 390 U.S. 377 (1968). In Neil v. Biggers, 409 U.S. 188 (1972), the Supreme Court held that a reliable identification procedure, even though suggestive, will not negate an identification of the defendant. The factors determining whether the procedure was too suggestive to accept as reliable were determined to be the following:

> (1) the opportunity of the witness to view the criminal at the time of the crime;
>
> (2) the witness' degree of attention;
>
> (3) the accuracy of the witness' prior description of the criminal;
>
> (4) the level of certainty demonstrated by the witness at the confrontation; and
>
> (5) the length of time between the crime and the confrontation.

Id. at 199.

Next, physical or photographic lineups are the preferred methods of identification. Either procedure has been determined to be much less suggestive than a "showup," where the victim is either presented with a suspect or a single photograph of the suspect. State v. Terry M. Henderson, No. 01C01-9401-CR-00012, slip. op. 5 (Tenn. Crim. App., at Nashville, Oct. 6, 1994). Beyond that, the extent to which an identification procedure may suggest a single suspect, even with the Neil v. Biggers factor, is largely subjective. While the procedure utilized here was suggestive, it was not, by the use of the factors in Neil v. Biggers so suggestive as to create any likelihood of a misidentification. The identifications were independently made by each of the victims.

Each witness had an opportunity to view the defendant from close range and under circumstances that would indicate attentiveness. Little time elapsed between the crimes and the confrontation. The other factors also support the position of the state. In consequence, we find no error by the admission of the identifications.

II

During the imposition of sentence for the crimes against the victim Mitchell, the trial court, which found no mitigating factors as described in Tenn. Code Ann. § 40-35-113, found four enhancement factors applicable to the crime of especially aggravated kidnapping:

> (1) history of criminal behavior (desertion from the military);
>
> (2) exceptionally cruel treatment (by blindfolding and threats to kill but not by use of the gun, which was considered an element of the offense);
>
> (3) gratification of the defendant's desire for pleasure (talk about white people and "having fun" by traumatizing the victim Mitchell); and
>
> (4) the potential for bodily injury (due to the victim'sexposure to the cold weather).

Tenn. Code Ann. § 40-35-114(1), (5), (7), and (16). The trial court found no other enhancement factors nor mitigating factors for the robbery of Mitchell. The sentence was enhanced from fifteen to nineteen years.

As to the attempted aggravated robbery of victim Moore, the trial court found no mitigating factors and no enhancement factors; the trial court did enhance the sentence for the attempted aggravated robbery:

> (1) history of criminal behavior; and
>
> (2) leader in the commission of the offense.

6

Tenn. Code Ann. § 40-35-114(1) and (2).  The sentence was enhanced from three to four years.

The defendant complains that the sentence was excessive.  More particularly, he insists that his conviction for desertion while in the military should not have been considered as an enhancement factor because the records presented in the presentence report did not indicate a disposition on the charge.  The defendant, who had no prior felony record, complains that the trial court, which classified the act as criminal behavior, should not have enhanced his sentence on this basis even though it was given only "a little weight, but not much."  The defendant also complains that the trial court should not have found as an enhancement factor that the victim was treated with exceptional cruelty.  See Manning v. State, 883 S.W.2d 635, 639 (Tenn. Crim. App. 1994).  Also, the defendant insists that the enhancement factor of the potential for bodily injury, Tenn. Code Ann. § 40-35-114(16), was an element of especially aggravated kidnapping and, therefore, could not be used as a separate enhancement for that offense.  See State v. Hill, 885 S.W.2d 357, 363-64 (Tenn. Crim. App. 1994).  Finally, the defendant argues that he should not have been classified as a dangerous offender and subjected to consecutive sentencing.  Tenn. Code Ann. § 40-35-115(b)(4).

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct.  Tenn. Code Ann. § 40-35-401(d).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  See State v. Jones, 883 S.W.2d 597 (Tenn. 1994).  The Sentencing Commission

7

Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence on a felony conviction, the presumptive sentence is the minimum within the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c) (amended in 1995 changing the presumptive sentence for a Class A felony to the mid-point in the range). If there are enhancement factors but no mitigating factors, the trial court may set the sentence above the minimum. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210. The sentence may then be reduced within the range by any weight assigned to the mitigating factors present. Id.

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case, our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the

court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not be routinely imposed ... and ... the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) [T]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

---

[1]The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. §40-35-115, Sentencing Commission Comments.

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

In Gray, our supreme court had ruled that before consecutive sentencing could be imposed upon the dangerous offender, as now defined by subsection (b)(4) in the statute, other conditions must be present: (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses.

More recently, in State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995) our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal acts by the offender." 905 S.W.2d at 938. The Wilkerson decision, which modified somewhat the strict, factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as "a human process that neither can nor should be reduced to a set of fixed and mechanical rules." Id. (internal quotation marks omitted).

Especially aggravated kidnapping is a Class A felony with a sentence of between fifteen and twenty-five years for the Range I offender. Tenn. Code Ann. § 40-35-112(a)(1). Aggravated robbery, a Class B felony, requires a sentence between eight and twelve years. Tenn. Code Ann. § 40-35-112(a)(2). Attempted aggravated robbery and aggravated assault require three- to six-year sentences.

10

Tenn. Code Ann. § 40-35-112 (a) (3). Thus, only the Mitchell kidnapping and the Moore attempted aggravated robbery convictions included enhanced sentences.

The proof establishes that the victim Mitchell was treated or allowed to be treated with exceptional cruelty. Tenn. Code Ann. § 40-35-114(5). There were facts, in addition to those establishing the elements of the crime, which warranted the application of the enhancement. The trial court pointed out that the victim, whose face was covered during a portion of the ordeal, had his life threatened and then was subjected to extremely cold weather after being bound to the tree. Had he not been able to free himself of a gag, his cries for help may have been unheeded. This factor, in our view, was entitled to significant weight. See State v. Carter, 908 S.W.2d 410, 413 (Tenn. Crim. App. 1995).

A charge is not considered evidence of a crime when no disposition is shown. State v. Marshall, 870 S.W.2d 532 (Tenn. Crim. App. 1993). Thus, the prior criminal behavior factor, because the conviction for desertion was not established by the proof (apparently by inadvertence), should not have been applied, even for a little weight. Nonetheless, a mid-range sentence of nineteen years is not inappropriate. The defendant indicated some pleasure in tormenting Mitchell by suggesting the stolen vehicle was to be utilized in murders. Tenn. Code Ann. § 40-35-114 (7).

Finally, the trial court's determination that there was the potential for bodily injury due to the victim's exposure to cold weather is supported by the record. Tenn. Code Ann. § 40-35-114 (16). While enhancement factors that are inherent in the offense may not be used to increase a sentence, this court has generally held that factor (16) may not be used where an element of the offense involves the use

of a weapon.  See, e.g., State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994) ("It is difficult to discern a situation in which an offense committed with a deadly weapon would not necessarily entail a risk to human life.").  In State v. Jones, 883 S.W.2d 597, 603 (Tenn. 1994), however, our supreme court held that this factor may be considered if the facts "demonstrate a culpability distinct from and appreciably greater than that incident to the offense for which he was convicted."  We believe that rationale applies in this case.  Proof that the defendant left the victim tied to a tree on a cold night is not essential to establish the kidnapping.  It does, in our view, indicate a "culpability ... greater than that" necessary to commit the offense.  Thus, the trial court correctly applied this factor and the nineteen-year sentence is sustainable.

The four-year sentence for attempted aggravated robbery, one year above the minimum, was based upon two factors.  The defendant does not contest the finding that he was a leader in the commission of the offenses.  Tenn. Code Ann. § 40-35-114(2).  Thus, a reduction in the four-year sentence, only one year above the minimum, would not be warranted even if a six-month court-martial did not qualify as "previous criminal history or behavior."  Tenn. Code Ann. § 40-35-114(1).

Moreover, consecutive sentencing was not improper in this case.  We must defer to the ruling made in the trial court.  The defendant does not challenge the trial court's conclusion that he qualified as a dangerous offender whose behavior indicates little or no regard for human life and that he had no hesitation about committing a crime where the risk to life was high.  Tenn. Code Ann. § 40-30-115(b)(4).  Any reliance by the defendant for a different result based upon State v. Woods would be misplaced in light of the ruling by the supreme court in Wilkerson.

12

The trial court determined that consecutive sentencing is necessary to protect the public from further criminal conduct on the part of the defendant. The threats the defendant made to kill someone else during the commission of the Mitchell kidnapping warranted a finding of dangerousness to the public. There was already one victim of the crime spree when the defendant attempted to rob and then participated in shooting at the second victim. The imposition of consecutive sentencing, in our view, reasonably relates to the severity of these offenses.

Finally, the trial court's use of the same consideration in imposing consecutive sentencing as is used to enhance a conviction for especially aggravated kidnapping is permissible. There in no prohibition against using the same facts and circumstances to support the application of the enhancement factor and a consecutive sentence. State v. Meeks, 867 S.W.2d 361, 377 (Tenn. Crim. App. 1993).

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Judge

CONCUR:


_____
John H. Peay, Judge


_____
Thomas T. Woodall, Judge